FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 26, 2024

SEAN F. McAVOY, CLERK

Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Frieda K. Zimmerman
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>VINCENT C. LANTIS,<br><br>Defendant. | Case No: 2:24-cr-00143-TOR-1<br><br>Pretrial Diversion Agreement |

Plaintiff, United States of America, by and through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, and Frieda K. Zimmerman, Assistant United States Attorney, as well as Defendant Vincent C. Lantis, and Defendant's counsel, Ryan Farrell, agree to the following Pretrial Diversion Agreement (the "Agreement"):

**I. Overview and Information**

1.  On October 19, 2023, the United States Attorney's Office for the Eastern District of Washington notified Defendant Vincent C. Lantis that the Railroad Retirement Board Office of Inspector General Office of Investigations ("RRB-OIG/OI") was investigating Defendant for theft of government funds, in violation of 18 U.S.C. § 641.

PRETRIAL DIVERSION AGREEMENT - 1

2.	Defendant Vincent C. Lantis waives indictment and consents to the filing of a one-count Information (the Information) in the United States District Court for the Eastern District of Washington, charging Defendant with one count of Theft of Government Funds in connection with the Covered Conduct, as set forth below.

3.	Defendant stipulates and agrees that Defendant did in fact violate 18 U.S.C. § 641 and that the United States could prove Defendant's guilt beyond a reasonable doubt. Defendant wishes to accept responsibility for this conduct. Accordingly, Defendant stipulates and agrees to the following facts, referred to herein as the "Covered Conduct":

   a.	The U.S. Railroad Retirement Board (RRB) is an independent agency in the Executive Branch of the U.S. Federal Government. The RRB's primary function is to administer comprehensive retirement, disability, survivor and unemployment/sickness benefit programs for the nation's railroad workers and their families as outlined under the Railroad Retirement Act and Railroad Unemployment Insurance Acts.

   b.	In October of 2001, Defendant began employment with Union Pacific Railroad as a Machinist in Hinkle, Oregon. Defendant was discharged from his railroad position around May 2019. After his discharge, Defendant became eligible to collect U.S. RRB unemployment insurance (UI) benefits.

   c.	On July 24, 2019, Defendant completed and signed a U.S. RRB form UI-1, Application for Unemployment Benefits and Employment Service. In the application, Defendant provided his bank account information in order to receive direct deposit of his benefits. Defendant also certified that he knew disqualifications and civil and criminal penalties may be imposed on him for false or fraudulent statements or claims or for withholding information to get benefits and that the information on the claims are true, correct, and complete. Defendant further certified he had understood and agreed to the rules and reporting requirements of collecting UI Benefits set forth in the U.S. RRB UB-10 Booklet.

PRETRIAL DIVERSION AGREEMENT - 2

      d.      In order to collect UI benefits, Defendant was required to submit a U.S. RRB form UI-3, Claim for Unemployment Benefits, every two weeks. Defendant submitted his claims online through the U.S. RRB Benefit Online Services Web Page, located at www.rrb.gov. Question l(a) on each UI-3 claim form asked Defendant to indicate whether he was employed or unemployed for each day in the claim period. Question 5(a) on each UI-3 form asked "Have you worked for a non-railroad employer since our last day of railroad work?" Question 7(a) on each UI-3 form asked "Did you work on any day claimed for any person or company or were you self-employed?"

      e.      Starting with the claim period beginning November 1, 2019, and continuing through the claim period beginning August 7, 2020, Defendant completed each UI-3 claim and indicated that he was not working, or receiving any additional income or benefits, and claimed that he was unemployed. Defendant answered "No" to questions 5(a) and 7(a) on every UI-3 claim form he submitted.

      f.      However, Defendant worked for Oregon Department of Transportation (ODOT) during the claim periods at issue, starting November 4, 2019. As a result of Defendant's false statements regarding his employment status for the claim periods beginning November 1, 2019, through the claims period beginning August 7, 2020, $24,570.78 in UI and CARES Act benefits were deposited into Defendant's bank account.

      g.      On April 5, 2023, Defendant was interviewed and confirmed that he filled out and signed the UI-1 Form, UI-35 Form, and 21 UI-3 Claim Forms for the claim periods beginning November 1, 2019, through the claim period beginning August 7, 2020. Defendant also confirmed that notwithstanding his representations on the claim forms, he worked for ODOT from November 4, 2019, to June 2, 2022. Defendant voluntarily dictated a written statement of admission, which stated he knows he incorrectly filled out the UI-3 Claim Forms, and also stated he was willing to repay any amounts wrongly paid to him.

PRETRIAL DIVERSION AGREEMENT - 3

      h.    Defendant admits he knowingly stole and converted to defendant's use $24,570.78 belonging to the United States, with the intention of depriving the owner of the use or benefit of the money.

4.    On authority from the Attorney General of the United States, through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, prosecution in the Eastern District of Washington for the Covered Conduct shall be deferred for 36 months. This 36-month period begins on the date this Agreement is signed by both parties and accepted by the Court. If Defendant fulfills his entire restitution obligation as described in Paragraph 8, *infra*, prior to the end of the 36-month period, the Agreement may be accelerated to terminate as early as 12 months from the date the Agreement is signed by both parties and accepted by the Court.

5.    The United States and Defendant stipulate and agree that the Court will maintain jurisdiction over this matter and that the Court shall be the final arbiter as to: (1) whether a party breached this Agreement, and if so; (2) the appropriate remedy, which may include either terminating the Agreement or modifying its terms. A modification may include extending the Agreement's 36-month period by an additional 6 months, for a total of 42 months, or accelerating the Agreement to terminate in as early as 12 months if Defendant fulfills his restitution obligation, as described in Paragraphs 4 and 8.

## II.    Terms

Defendant stipulates and agrees to the following terms:

6.    **Waiver of Constitutional Rights.**    Defendant, by entering this Agreement, agrees to waive certain constitutional rights including (1) the right to a jury trial; (2) the right to see, hear, and question witnesses; (3) the right to compel witnesses to testify; (4) the right to remain silent at trial; and (5) the right to testify at trial. Defendant knowingly and voluntarily waives the above rights.

7. **Supervision.** Defendant stipulates and agrees to be supervised by the U.S. Probation Office during this 36-month period (or longer, if the period is extended by the Court). Further, Defendant understands the following:

    a. Defendant shall not violate any federal, state, or local law. This term does not apply to minor civil infractions such as speeding.

    b. If Defendant is arrested or has any official contact with law enforcement in a civil or criminal investigative capacity, Defendant shall notify Defendant's supervising pretrial diversion officer within two business days.

    c. Defendant shall live within the jurisdiction of the District of Oregon. If Defendant seeks to reside outside the District, Defendant shall notify and seek the approval of Defendant's supervising pretrial diversion officer so that appropriate arrangements in light of the Agreement can be made.

    d. Defendant shall maintain employment in a lawful occupation. When out of work, Defendant shall notify Defendant's supervising pretrial diversion officer. In the event that Defendant becomes self-employed, Defendant shall provide evidence of such self-employment.

    e. Defendant shall report to Defendant's supervising pretrial diversion officer as directed by the Court or U.S. Probation. Any failure to abide by the reporting requirements as established by the Court or U.S. Probation shall be deemed a violation of the Agreement.

    f. Defendant shall not possess, control, consume, and/or use any illegal control substance, including marijuana, nor own, possess, or have access to any firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person, such as nunchakus or tasers), unless it has been disclosed to, and approved by, U.S. Probation.

g.  Defendant will allow the probation officer to visit at any time at Defendant's home or elsewhere, and will permit the probation officer to take any items prohibited by the conditions of supervision that he or she observes in plain view.

8.  **Restitution.** As an express condition of this Agreement and the promises made by the United States herein, Defendant agrees to make full restitution to the United States Railroad Retirement Board as follows:

a.  Defendant agrees to repay the amount he received from the RRB in wrongfully received benefits, for a total restitution amount of $24,570.78.

b.  Defendant agrees to pay restitution of $682.52/month to the Railroad Retirement Board until the outstanding balance is paid in full.  Payment can be made online at https://secure.rrb.gov/onlinebillpayment or by mailing a check or completed form G-421F, Repayment by Debit Card, to the following:

> Railroad Retirement Board
> Retirement Survivor Debt Collections
> PO Box 979018
> St. Louis MO  63197-9000

c.  Defendant agrees that his obligation to make full restitution of $24,570.78 continues until full restitution is made, and agrees that he is obligated to make full restitution of $24,570.78 regardless of whether he breaches this Agreement.

d.  Until Defendant's restitution obligations are paid in full, Defendant agrees to fully disclose all assets in which Defendant has any interest or over which Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or third party.

e.  Defendant voluntarily agrees that the United States may immediately record a lien against all property and rights to property of the Defendant, which shall be released upon full payment of the restitution balance.

f.  Defendant agrees that if he fails to make restitution payments as provided in this Paragraph, the United States shall be entitled to the entry of a money judgment against the Defendant in the amount of the outstanding balance. The parties

further agree that if a money judgment is entered, the United States shall be entitled to discovery in aid of collection of the money judgment.

   g. Defendant understands the Treasury Offset Program ("TOP") collects delinquent debts owed to federal agencies. If the Defendant fails to make his restitution payments as agreed in this Paragraph, he shall be enrolled in TOP and TOP may take all or part of Defendant's federal tax refund, federal retirement benefits, or other federal benefits and apply these monies to Defendant's restitution obligations.

   h. Defendant understands that if the Defendant fails to make his restitution payments as agreed in this Paragraph, the United States may pursue any available remedies to ensure the restitution obligation is satisfied, including, but not limited to, garnishment and/or execution against available funds, wages, or assets.

  9. **Tolling.** Defendant stipulates and agrees to toll the running of all applicable statutes of limitations and any time-based defenses for the Covered Conduct. This tolling shall run from the date the Agreement is signed by all parties until the Agreement expires or is terminated by the Court. Defendant stipulates and agrees that the Agreement's tolling provision does not abridge or curtail the applicable statute of limitations in any way, but rather extends the applicable statute of limitations by the period of time that the Agreement is in effect.

Defendant further expressly waives indictment and all rights to a speedy indictment and/or trial pursuant to the Sixth Amendment of the United States Constitution, 18 US.C. § 3161, Federal Rule of Criminal Procedure 48(b), and any applicable Local Rules of the United States District Court for the Eastern District of Washington for the period during which this Agreement is in effect.

  10. **Breach.** If the Court, after a hearing, terminates the Agreement based on a breach by Defendant, the United States may resume its prosecution against Defendant as to the charge(s) under investigation, and any additional charges.

  11. **Admissibility of the Agreement in Prosecution**. In the event that the Court terminates the Agreement based on a breach by Defendant, Defendant stipulates

PRETRIAL DIVERSION AGREEMENT - 7

and agrees that the Agreement and Defendant's admissions contained therein shall be admissible against Defendant at any trial, sentencing, or other related proceeding.

The United States stipulates and agrees to the following:

12. **Deferred Prosecution and Dismissal.** The United States stipulates and agrees to defer prosecution of the above-captioned matter for a period of 36 months (or up to 42 months if the Agreement is extended). When and if Defendant satisfies all the requirements of the Agreement (including any modifications or extensions), the United States stipulates that it will seek dismissal with prejudice of the Information filed against Defendant pursuant to this Agreement. Except in the event of a violation by Defendant of any term of this Agreement, the United States will bring no additional charges against Defendant relating to Defendant's conduct as described in the Information and the Covered Conduct set forth above. This agreement does not provide any protection against prosecution for any crimes except as set forth above. Defendant and the United States understand that the Court must approve deferral under the Speedy Trial Act, in accordance with 18 U.S.C. § 3161(h)(2). Should the Court decline to defer prosecution for any reason: (1) both the United States and Defendant are released from any obligation imposed upon them by this Agreement; and (2) this Agreement shall be null and void, except for the tolling provisions set forth herein.

### III. Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Vanessa R. Waldref
United States Attorney

_____        11/23/24
Frieda K. Zimmerman                    Date
Assistant U.S. Attorney

PRETRIAL DIVERSION AGREEMENT - 8

I have read the Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter into this. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. I understand the terms and conditions of the Agreement and agree to comply with them.

_/s/ V. C. Lantis_            11-13-24
Vincent C. Lantis            Date
Defendant

_/s/ Ryan Farrell_            22 November 2024
Ryan Farrell            Date
Attorney for Defendant

Approved without passing judgment on the merits or wisdom of this diversion.

_/s/ Thomas O. Rice_            November 26, 2024
The Honorable Thomas O. Rice            Date
United States District Judge

PRETRIAL DIVERSION AGREEMENT - 9